UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAYCEE TEETS AND FRANKLIN
JAMES COTY, as Co-Personal
Representatives of the Estate of
K.L.C., deceased,

     Plaintiff,

v.                               Case No: 8:15-cv-0094-MSS-MAP

HILLSBOROUGH COUNTY SCHOOL
BOARD and  HILLSBOROUGH
COUNTY SCHOOL DISTRICT,

     Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on the Motion (Dkt. 32) of the Defendant The School Board of Hillsborough County, Florida[1] ("School Board"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 3.01, seeking final summary judgment, the related Reply in support of the motion (Dkt. 41), and Plaintiffs' Response in opposition to the motion (Dkt. 38).  The School Board contends that there are no genuine issues of material fact as to the constitutional claims raised by Plaintiffs Kaycee Teets and Franklin James Coty, as Co-Personal Representatives of the Estate of Keith Logan Coty (collectively "Plaintiffs") and, thus, the School Board is entitled to final judgment in its favor as a  matter of law.

---

[1] Plaintiffs additionally name the "Hillsborough County School District" as a defendant.  By constitutional and statutory mandate, however, the School Board of Hillsborough County is to operate the schools in a district and is a body corporate amenable to suit.  Fla. Stat. §§ 1001.40, 1001.41.  The district is not made a body corporate and it is assigned no duties.  Thus, the district has no existence separate from the School Board of Hillsborough County and cannot be a party to this or any other action.

**I.       STANDARD OF REVIEW**

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

The availability of relief as a matter of law on summary judgment is, therefore,

2

constrained by the pertinent undisputed facts, which for purposes of this analysis are set forth below.

## II.     UNDISPUTED FACTS

Keith Logan Coty ("Coty") was a six (6) year old student enrolled in the Hillsborough County School District at Seminole Heights Elementary School ("Seminole Heights"). (Dkt. 39 at ¶ 1).  On January 16, 2014, just after lunch, Coty informed his teacher, Ms. Parks, that he had a headache.[2] (Dkt. 39 at ¶ 2; Dkt. 34-11 at 46:2-9)  Rather than direct Coty to go to the school clinic, Ms. Parks instructed him to lie down in the back of the classroom.  (Dkt. 39 at ¶ 3)  At some point after lying down in the back of the classroom, Coty vomited.   (Id. at ¶ 4)  Rather than call 911, Ms. Parks called the front office for the assistance of the school nurse. (Dkt. 39-6 at 16-22, 57:23-58:8)

Mary Scoggins, the school secretary, was working in the front office that afternoon and received Ms. Parks' call regarding Coty's vomiting.  (Dkt. 34-9 at 6:1, 6:25-7:16)  Ms. Scoggins instructed the school nurse, Kameshia Simmons ("Nurse Simmons"), to go to Coty's classroom.  (Dkt. 32 at ¶ 5; Dkt. 38 at ¶ 5, 7)  Ms. Scoggins also called Coty's mother at 12:51 p.m. and left a voicemail informing her that Coty was vomiting and that she needed to come pick him up. (Dkt. 39 at ¶ 6)

While Ms. Parks was waiting for Nurse Simmons to arrive, she sent the rest of the class to the adjacent classroom pod. (Dkt. 34-6 at 34:20-35:3; Dkt. 34-3 at 34:15-17) Subsequently, another teacher, Ms. Burgandale opened the door to the classroom and noticed Ms. Parks standing in the back corner of the empty classroom looking concerned.

---

[2] While the exact time Coty complained about having a headache is not certain, it is undisputed that his complaint came just after lunch.  (Dkt. 39 at ¶ 2; Dkt. 34-11 at 46:2-9)  Ms. Teets testified that according to Coty's class schedule lunch ended at approximately 12:34 p.m.  (Dkt. 34-11 at 46:2-9)

(Dkt. 34-3 at 33:10-23, 34:18-35:19; Dkt. 38-1)  As Ms. Burgandale walked toward Ms. Parks, she saw Coty lying on the floor on some pillows. (Id.)  Ms. Burgandale noted some vomit on the carpet and noticed that Coty looked like he was sleeping.  (Id. at 35:20-36:3) Ms. Burgandale then went out into the hallway and saw Nurse Simmons coming toward the classroom. She told Nurse Simmons that she needed to come in because a student had been sick and it looked like he had fallen asleep after being sick. (Dkt. 35-3 at 36:4–10; Dkt. 38-1).

Upon entering the classroom, Nurse Simmons immediately took Coty's pulse and asked if Coty had any allergies, to which Ms. Parks responded no.  (Dkt. 35-3 at 37:5-10) Nurse Simmons then went over to the classroom phone to call the front office to verify whether Coty had any allergies. (Id.)  As Nurse Simmons was speaking with the front office, Ms. Burgandale noticed that Coty had begun to make "a rattling kind of noise." (Dkt. 34-3 at 38:6-39:3, 40:23-41:6; Dkt. 38-1)  Ms. Burgandale had "a feeling that something wasn't right," so she walked over to the classroom phone, which had just been hung up by the nurse, and called the office back and told Ms. Scoggins to call 911 because Coty was not breathing properly.  (Id.; Dkt. 34-6 at 47:14-18)

Ms. Scoggins placed the 911 call at 12:58 p.m.  (Dkt. 39 at ¶ 7)  The school principal, Jackie Masters ("Dr. Masters"), was in the front office when she overheard the call from Coty's classroom to Ms. Scoggins requesting 911.  (Dkt. 34-5 at 10:6-19, 29:12-30:9, 56:22-25; Dkt. 34-1 at 7:13-8-23)  Dr. Masters immediately proceeded to Coty's classroom, and radioed the school custodian to inform him that emergency medical services ("EMS") had been dispatched to the school and he needed to open the gates. (Dkt. 34-5 at 59:2-13, 60:1-19)

4

Upon arriving at the classroom, Dr. Masters observed Coty lying on some pillows with Nurse Simmons at Coty's feet, taking his pulse.  Ms. Burgandale was standing near Coty's head. (Dkt. 34-5 at 60:22-63:15; Dkt. 34-1 at 12:12-17)  Dr. Masters placed a hand on Coty's neck and perceived what she believed was a pulse in his carotid artery shortly prior to EMS's arrival.  (Dkt. 34-5 at 60:22-63:15)  Both Dr. Masters and Nurse Simmons stayed with Coty until the EMS arrived.  (Dkt. 34-5 at 63:4-15, 66:13-67:3, 67:18-68:1; Dkt. 34-10 at 19:4-20:2, 25:19-27:11, 29:1-24; Dkt. 34-3 at 42:15-43:12; Dkt. 39 at ¶ 9)

At the time of the incident, Nurse Simmons was licensed by the state of Florida as a licensed practical nurse ("LPN") and was certified in cardiopulmonary resuscitation ("CPR") and automated external defibrillator ("AED") use by the American Heart Association.  (Dkt. 34-10 at 7:1-23, 10:4-9, 14:3-20; Dkt. 34-8 at 21:20-23:17, 48:2-7)  Nurse Simmons had never been subject to any disciplinary complaints or reports during her time of employment with the School Board or before. (Dkt. 34-12 at ¶¶ 4–5)  Neither Nurse Simmons nor any of the other school personnel performed CPR or administered the available defibrillator on Coty before EMS arrived.  (Dkt. 34-10 at 13:21-22; Dkt. 34-5 at 28:12-21; Dkt. 34-3 at 7:12-14; Dkt. 34-6 at 47:19-48:1; Dkt. 34-1 at 18:20-22)  It is disputed whether Coty stopped breathing before EMS arrived.[3]

Ms. Teets, Coty's mother, arrived at the school at approximately 12:59 p.m.  (Dkt. 39 at ¶ 8)  It is disputed whether she asked to perform CPR or otherwise render assistance to Coty.[4]  In any event, within seconds of Ms. Teet's arrival on the scene, EMS arrived

---

[3] Every witness in the classroom that day, other than Coty's mother who arrived moments before EMS, testified that Coty was breathing and/or had a pulse until the point of EMS's arrival. (Dkt. 34-5 at 63:2-15; Dkt. 34-10 at 19:4-20:2; Dkt. 34-1 at 16:12-17:15; Dkt. 34-6 at 37:6-25, 47:19-48:16; Dkt. 34-3 at 17:18-18:2).

[4] Ms. Teets alleges in her Response that she was prevented from rendering assistance to Coty.  (Dkt. 38 at ¶ 10).  The School Board denies this assertion.  (Dkt. 41 at 5-6)  In Ms. Teet's deposition she testified

and began administering aid to Coty.  (Dkt. 34-11 at 79:7-80:13)

EMS arrived at the scene at approximately 1:03 p.m., which was within five (5) minutes of the 911 call. (Dkt. 39 at ¶¶ 7, 9)  EMS transported Coty to St. Joseph's Hospital, where he died on January 17, 2014.  (Id. at ¶ 10)  It was later determined that Coty suffered from an arteriovenous malformation ("AVM") in his cerebellum that had been present likely from birth. (Dkt. 34-11 at 102:7-103:9, 104:15-105:10; Dkt. 34-7 at 9:6-11, 11:4-12:17)  The AVM ruptured without warning while he was at school, causing a brain hemorrhage.  (Id.)  At the time of the incident, no one, including his parents, knew that Coty had an AVM, that it ruptured, or that he was suffering from a brain hemorrhage. (Dkt. 34-11 at 128:11-13, 157:10-19)  It is undisputed that no one at Seminole Heights acted with the intent to harm Coty and that no one did anything to cause Coty's brain hemorrhage.  (Dkt. 34-11 at 109:11 – 110:2, 137:9-11; Dkt. 34-4 at 12:11-13:5)

## III.    DISCUSSION

On these facts, Plaintiffs, Coty's parents raise a single claim against the School Board, a violation of Coty's substantive due process rights under the Fourteenth Amendment actionable pursuant to 42 U.S.C. § 1983.  Specifically, Plaintiffs claim that Coty suffered a constitutional violation resulting from a policy or lack of training by the School Board, which policy or lack of training was deliberately indifferent to Coty's constitutional rights.

### APPLICABLE LAW

Under the Due Process Clause of the Fourteenth Amendment, no state can

---

that she did not ask to administer CPR because they would not let her touch Coty and she did not ask anyone else to administer CPR because within seconds of her arriving EMS arrived and immediately began providing aid to Coty.  (Dkt. 34-11 at 79:1-80:13)

deprive "any person of life, liberty, or property without due process of law."  U.S. Const. Amend. XIV, § 1. "To impose § 1983 liability on a municipality, a plaintiff must show:  (1)  that  his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  G.C. ex rel. Cosco v. Sch. Bd. of Seminole County, Florida, 639 F. Supp. 2d 1295, 1307 (M.D. Fla. 2009) (quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)).   The first of these elements – a constitutional violation – is the most significant.  The absence of this element ends the inquiry.  As the Eleventh Circuit explained in Wyke v. Polk County Sch. Bd., 129 F. 3d 560, 568-70 (11th Cir. 1997), "Before addressing whether the School Board can be held liable for a failure to train its employees, [the Court] must first determine whether those employees violated any of [the student's] constitutional rights by failing to discharge some constitutional duty owed directly to [the student] . . . .") (citing Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (stating that "inquiry into a government entity's custom or policy is relevant only when a constitutional deprivation has occurred")).

**ANALYSIS**

The sum and substance of Plaintiffs' claim here is that the School Board violated Coty's Fourteenth Amendment's rights by failing to provide proper resuscitative efforts to Coty and failing timely to call 911.  (Dkt. 34-11 at 35:23-36:18; Dkt. 34-4 at 12:11-18). Plaintiffs contend that improper or failed policies of the School Board, including the School Board's failure to train its staff, were to blame for Coty's death.  (Dkt. 34-11 at 38:5-17; Dkt. 34-4 at 23:22-24:24)

However, as discussed in detail below, though Coty's death and the events of that

day are by any measure tragic and heartbreaking, the conduct of the School Board and its employees, is not actionable on these facts.  Accordingly, as explained more fully below, the School Board is entitled to the entry of summary judgment in its favor in this case.

### PLAINTIFFS' CLAIMS FAIL BECAUSE THEY CANNOT ESTABLISH A THRESHOLD CONSTITUTIONAL VIOLATION

Two legal disputes lie at the center of the Parties' motion: first, whether Coty was in the custody of the School Board at the time of this incident and second, which standard of care governs the Court's analysis.  The answer to the first question dictates the answer to the second, and it is largely dispositive of this case.  Each is addressed in turn.

### A. Coty Was Not In The Custody Of The State When He Fell Ill At School

For the purposes of substantive due process, a constitutional duty of protection can only arise where the state has a custodial relationship with an individual, typically arising from such circumstances as incarceration in prison or involuntary commitment in a mental institution.  Davis v. Carter, 555 F.3d 979, 989 n. 2 (11th Cir. 2009).  Though it may seem counter intuitive to a parent who routinely and by compulsion of law drops a young child off at a school, the law is plainly and uniformly established that while at school students are *not* in a custodial relationship with the state. See id. (noting that compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise to an affirmative duty of protection); Nix v. Franklin County Sch. Dist., 311 F.3d 1373, 1378 (11th Cir. 2002) ("This court has ruled that schoolchildren are not in a custodial relationship with the state.").

"[T]he state simply does not restrict a student's liberty in the same sense that it does when it incarcerates prisoners or when it commits mental patients involuntarily.

8

Absent that type of restraint, there can be no concomitant duty to provide for the student's 'safety and general well-being.'" Wyke, 129 F.3d at 569.  In this regard, the Eleventh Circuit has stated that governmental entities have no constitutional obligation to provide rescue services, competent or otherwise, in a non-custodial setting.

The Eleventh Circuit has likewise foreclosed any claimed "special relationship" "state created danger" exceptions to this general rule, and any attempted reliance upon such an exception by Plaintiffs is misplaced. "Those theories are no longer viable in the Eleventh Circuit." Girouard v. City of Palm Bay, Fla., 6:11-CV-1032-ORL-28, 2011 WL 5444259, at *2 (M.D. Fla. Nov. 9, 2011); see also Vaughn v. City of Athens, 176 F. App'x 974, 976 n. 1 (11th Cir. 2006) ("[T]his Court has written that the 'special relationship' and 'state created danger' doctrines no longer are valid.");[5] Waddell v. Hendry County Sheriff's Off., 329 F.3d 1300, 1305 (11th Cir. 2003) (noting that the "special relationship" and "special danger" doctrines are no longer applicable to the determination of whether an individual's substantive due process rights have been violated).  Thus, the School Board and its staff owed Coty no general constitutional duty of protection or rescue.[6]

---

[5] "Although an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000).

[6] The Court notes that Ms. Teets alleges that the School Board prevented her from administering CPR to Coty prior to the EMS arriving just seconds later.  Although this contention is disputed, even if true, and this could be argued to have resulted in a custodial relationship for a matter of seconds in the sense that for that limited period, the school officials prevented Ms. Teets from exercising custody over her son, that arguable custodial window was extremely narrow and the School Board cannot be found to have failed in that short period of time to discharge any duty it might have had.

**B. The Seminole Heights Employees' Actions In Attending To Coty's Medical Emergency Were Not Willful Or Malicious, And, Thus, Do Not "Shock The Conscience" And, Therefore, Do Not Establish A Constitutional Violation**

In the absence of a general duty of protection, "[P]laintiffs face a high bar when attempting to establish a substantive due process violation as conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." Maddox v. Stephens, 727 F.3d 1109, 1119 (11th Cir. 2013) (internal citations and quotations omitted). "Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Nix v. Franklin County Sch. Dist., 311 F.3d 1373, 1375–76 (11th Cir. 2002). Rather, to clear this bar, Plaintiffs must offer evidence that the complained of action or inaction "violates the decencies of civilized conduct;" or is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency;" or "interferes with rights implicit in the concept of ordered liberty." It must be a level of behavior that "is so egregious [and] so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 846–47 & n. 8 (1998) (citation and internal quotation marks omitted).

Plaintiffs have not even attempted to assert or demonstrate this level of egregiousness on the facts presented in this case. Instead, Plaintiffs argue that the School Board's failure to properly train its staff and its directive that its staff route emergency calls to its school offices rather than place them directly through teacher cell phones (a fact that is disputed) reflect a deliberate indifference to the safety and welfare of the students left in its care and resulted in Coty's death in this instance. This, Plaintiffs argue, is particularly egregious and indifferent where prior deaths have occurred in

10

circumstances that might have been avoided had the School Board put different training and protocols in place.

However, even if it is true that the School Board was deliberately indifferent to the risks at which it was placing its students by these failures, no liability for a constitutional violation would attach. The Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." Nix, 311 F.3d at 1377 (emphasis added). "[I]n a classroom setting, courts have not allowed due-process liability for deliberate indifference, and, moreover, will only allow recovery for intentional conduct under limited circumstances." Id. at 1378 (emphasis added). See also Dacosta v. Nwachukwa, 304 F.3d 1045 (11th Cir. 2002) (finding no constitutional violation notwithstanding an alleged intentional battery by a teacher on a student); Davis, 555 F.3d 979 (finding no constitutional violation where coaches allegedly ignored student's complaints of dehydration while subjecting him to rigorous football conditioning drills and failed to attend to student even after he collapsed); Niziol v. Dist. Sch. Bd. of Pasco County, 240 F. Supp. 2d 1194 (M.D. Fla. 2002) (finding no constitutional violation where school resource officers failed to investigate reports of a gun present on campus and a student was subsequently shot and killed with the gun). In point of fact, to date "[o]nly in the limited context of due-process claims based on excessive corporal punishment has [the Eleventh Circuit] held that the intentional conduct of a high-school educator may shock the conscience." Id. (discussing Neal v. Fulton Cnty. Bd. of Educ., 229 F. 3d 1069, 1071, 1075–76 (11th Cir. 2000) (concluding that high school coach's conduct in intentionally striking a student with a metal weight, knocking

11

the student's eye out of its socket, as punishment for his involvement in a fight with another student, rose to the level of a substantive due process violation)).

There is simply no suggestion on this record that the employees involved in providing care to Coty bore any malevolent intent or exhibited any behavior even approaching the level of egregiousness required to meet this exacting standard.

Additionally, Plaintiffs concede there is no suggestion that the School Board's alleged policy or failure to train was in any way directed at Coty or indicative of some endemic, malevolent purpose of the School Board to harm schoolchildren.  (Dkt. 34-11 at 109:11-110:2, 137:9-11; Dkt. 34-4 at 12:11-13:5)  Its policies, even if infirm in some way, do not give rise to a claim.  In fact, and as previously stated, "inquiry into a government entity's custom or policy is relevant only when a constitutional deprivation has occurred." Rooney, 101 F. 3d at 1381.

The facts here are unbelievably heart-wrenching.  No parent should ever face the horror that these Plaintiffs did.  However, young Coty was not in state custody at the time of his death, and there is insufficient evidence to meet the high threshold of proof necessary to establish in this noncustodial situation that the School Board violated Coty's constitutional rights granted to him under the Fourteenth Amendment.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' claims for municipal liability under § 1983 fail as a matter of law and the School Board is entitled to summary judgment in its favor.

Accordingly, it is hereby **ORDERED** as follows:

1.  Defendant's Motion for Summary Judgment (Dkt. 32) is **GRANTED**.

2. The **CLERK** is **DIRECTED** to enter judgment for Defendant and against Plaintiffs in accordance with this Order.

3. The **CLERK** is further **DIRECTED** to **TERMINATE** any pending motions and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 7th day of November, 2016.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person